Dennis P. Conner, Bar No. 283
Keith Marr, Bar No. 5999
J.R. Conner, Bar No. 36402194
CONNER, MARR & PINSKI, PC
P. O. Box 3028
Great Falls, MT 59403-3028
Phone: (406) 727-3550
Fax: (406) 727-1640
dennis@mttrials.com
keith@mttrials.com
jr@mttrials.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| SHANNON NELSON,<br><br>Plaintiff,<br><br>vs.<br><br>DAJ GLOBAL PARTNERS, LLC, DAJ DISTRIBUTION, INC., AMAZON.COM, INC., and DOES 1 – 10,<br><br>Defendants. | Cause No. CV 23-76-BU-BMM-JTJ<br><br>**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL** |

**COMES NOW** Plaintiff Shannon Nelson and demands a trial by jury and, for her Complaint against Defendants, alleges:

## GENERAL ALLEGATIONS

1. Shannon Nelson purchased a Pure Daily Care NuDerma Professional Skin Therapy Wand (the "Wand") from Pure Daily Care through online retailer Amazon.com. The Amazon.com listing page advertises the Wand as a product utilizing the "natural healing power of Argon and Neon high frequency to boost your overall skin profile" with the use of "[h]igh frequency energy [that] is a safe and 100% natural way of boosting natural skin radiance."

2. The Wand was shipped by Amazon to Plaintiff Nelson after Plaintiff paid Amazon for the Wand.

3. The Wand was designed, manufactured, distributed, marketed, sold, and/or warranted by Defendants.

4. On January 1, 2022, Plaintiff Shannon Nelson was using the Wand in an expected and foreseeable manner when the Wand's glass attachment shattered, causing an electric shock that jolted Plaintiff and causing shards of glass to hit her face and eye causing harms and losses including an ocular laceration and rupture of her left eye, scarring, vision limitations, emotional pain and suffering, past and future health care expenses, past and future lost earnings and earning capacity, past and future pain and suffering, past and future mental and emotional suffering, lost services, alteration of established course of life, and loss of enjoyment of life.

5. Contrary to Defendants' representations, the Wand is not safe or fit for consumer use because the Wand's glass attachment shattered unexpectedly.

6. Pure Daily Care is a registered trademark of DAJ Global Partners, LLC.

7. Defendant DAJ Global Partners, LLC, was a seller of the Wand within the meaning of § 27-1-719, MCA, in effect at the time of accrual of Plaintiff's claims and is strictly liable for the harm caused.

8. Defendant DAJ Distribution, Inc., was a seller of the Wand within the meaning of § 27-1-719, MCA, in effect at the time of accrual of Plaintiff's claims and is strictly liable for the harm caused.

9. Amazon is an online retailer and was a seller of the Wand within the meaning of § 27-1-719, MCA, in effect at the time of accrual of Plaintiff's claims and is strictly liable for the harm caused.

10. At all times herein mentioned, Defendants, and each of them, were members of, and engaged in, a joint venture, partnership and common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

11. At all times relevant to this lawsuit, the Defendants actually knew of the Wand's defects and continued to sell the Pure Daily Care Wands without regard to the safety of Plaintiff.

## PARTIES

12. Plaintiff Shannon Nelson is a resident and citizen of Montana and resides in Livingston, Park County, Montana.

13. Defendant DAJ Global Partners, LLC, is a limited liability company organized under the laws of California. DAJ Global is headquartered at 1421 N Main St, Los Angeles, California, 90012, United States.

14. Defendant DAJ Distribution, Inc., is a corporation incorporated under the laws of California. DAJ Distribution is headquartered at 1421 N Main St, Los Angeles, California, 90012, United States.

15. Defendant Amazon.com Inc. ("Amazon") is a corporation incorporated under the laws of Delaware. Its registered office of the corporation is 251 Little Falls Drive, City of Wilmington, County of New Castle, State of Delaware 19808. Amazon is an online commerce entity which regularly conducts business in the State of Montana.

16. The true names or capacities, whether individual, corporate, associated, affiliated or otherwise of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Upon information and belief, each of the Defendants sued as a fictitious name is legally responsible for the events and happenings referred to, and Plaintiff will seek leave

of Court to amend this Complaint to insert their true names and capacities in place and instead of the fictitious names when the same become known to them.

## JURISDICTION

17. Jurisdiction is asserted under 28 U.S.C. §1332 (diversity) because this is a civil action between citizens of different states and the amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. §1332.

18. This Court has subject matter jurisdiction over this action and personal jurisdiction over each party. Defendants are subject to jurisdiction in Montana courts as to any claim for relief arising from the transaction of any business within Montana, the commission of any act resulting in accrual within Montana of the tort actions giving rise to this Complaint.

19. DAJ Global Partners, LLC ("DAJ Global") and DAJ Distribution, Inc., ("DAJ Distribution") (collectively called "DAJ") designed, manufactured, assembled, marketed, sold, and distributed the Wand that injured Plaintiff.

20. DAJ purposefully seeks to serve the market in Montana. The Wand is advertised and marketed to Montana residents on its interactive website and on social media platforms including Instagram, Facebook, and Snapchat. DAJ derives a benefit from the sale of Wands to Montana residents through multiple online retailers and through third-party brick and mortar retailers in Montana. DAJ markets the Wand as the "#1 Best Selling Skincare Devices Worldwide[.]"

(See PureDailyCare.com at https://puredailycare.com/pages/buy-nuderma-high-frequency).

21. Amazon was instrumental in the sale of the Wand by placing itself squarely between the DAJ Defendants and Nelson. Amazon was in the chain of distribution of the Wand. Amazon was pivotal in bringing the product to the consumer through its online ecommerce platform and interactive website. Amazon profited from the sale of the product. Amazon maintained control over and/or had a substantial ability to influence the sale and distribution process of the Wand because of the fulfillment agreement which controls the sale and shipping of Wands which are possessed, stored, and shipped from Amazon's warehouses to the consumer.

22. Amazon purposefully seeks to serve the market in Montana. Amazon markets, sells, and provides services to Montana residents. Amazon continues to grow its connection to the forum with the addition of a 72,000 square foot delivery station near Missoula, Montana, as the "last mile" stage of Amazon's shipping process. The Amazon facility will receive orders from larger Amazon facilities across the United States and dispatch delivery vans to bring those orders to customers' front doors. Amazon recognizes that the "delivery station in Montana will connect Amazon's national fulfillment network to customers in Missoula and beyond" and that it looks forward to "growing [Amazon's] partnerships with businesses and community organizations in the area."

23. The Wand moved in the stream of commerce to Montana, as expected and intended by the Defendants, when it was sold to, shipped to, and used by the Plaintiff residing in Montana. This lawsuit arises out of and relates to Defendants' contacts with Montana and a Montana Plaintiff.

24. The Court has specific jurisdiction over DAJ Global, DAJ Distribution, and Amazon, for this litigation based on the facts. The Plaintiff resides in Montana and the Wand's failure and harm it caused occurred in Montana. The Wand had a Montana owner and was transported in the stream of commerce to Montana as Defendants expected it would be. The Court does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a business that delivers its products into the stream of commerce expecting they will be purchased by consumers in the forum state. Montana has a legitimate interest in providing its residents with a convenient forum for redressing harm inflicted by out-of-state actors. Where individuals purposefully derive benefit from their interstate activities, it is unfair to let them escape having to account in other states for consequences that arise proximately from such activities because the Due Process Clause may not be wielded as a territorial shield to avoid interstate obligations voluntarily assumed. The purposes sought to be achieved by Montana's product liability laws in effect when Plaintiff's claim accrued would be furthered by their application to this set of facts. One of the central purposes of Montana's product liability scheme is to

prevent harm to Montana residents caused by defective products. Montana has a direct interest in applying its product liability laws because its resident was harmed by this defective product. Montana adopted a strict liability standard to afford maximum protection for consumers against defects in manufactured products with the focus on the condition of the product, and not on the manufacturer's conduct or knowledge. Montana law provides maximum protection and compensation to Montana residents with the focus on the condition of the product and not on the conduct of the manufacturer. Applying Montana's provisions guaranteeing strict liability and full compensation to a cause of action involving Montanans harmed by a defective product furthers the purposes of Montana law by ensuring that the costs to Montana residents due to harms from defective products are fully borne by the responsible parties. None of the Defendants structured its conduct to lessen, avoid, or deny sales to Montana residents. Defendants' willingness to serve and sell to Montana consumers, its pervasive marketing on multiple platforms to Montana residents, and its accrual of benefits from Montana consumers buying its products make it reasonable for DAJ Global Partners, DAJ Distribution, and Amazon to expect being haled into a Montana court.

## **VENUE**

25.  Venue is proper in United States District Court, Butte Division, because the injuries occurred in Park County, Montana, within the Butte Division.

## COUNT I

## STRICT LIABILITY – DEFECTIVE DESIGN
## (DAJ Defendants)

26.     Plaintiff incorporates all previous paragraphs as if fully reproduced.

27.     The Wand was in a defective condition because of its defective design when used as designed, developed, tested, assembled, and manufactured because of the failure to design out the glass tube's tendency to shatter and cause injury when used in an expected or foreseeable manner.

28.     The Wand was in a defective condition:

    (a)     Because it was dangerous to an extent beyond that anticipated by the ordinary user; and

    (b)     Because safer alternative designs were economically and technologically feasible when the Wand left the control of Defendants that would have precluded shattering glass and Plaintiff's injuries.

29.     The defective nature of the Wand was a proximate cause of the harms and losses suffered by the Plaintiff.

## COUNT II
## STRICT LIABILITY – MANUFACTURING DEFECT
## (DAJ Defendants)

30.     Plaintiff incorporates all previous paragraphs as if fully reproduced.

31.     The Wand was in a defective condition at the time of the sale by Defendants because of manufacturing defects and the failure of the Wand to conform to design.

32. The defective nature of the Wand was a proximate cause of the harms and losses suffered by the Plaintiff.

## COUNT III
## STRICT LIABILITY – FAILURE TO WARN
## (All Defendants)

33. Plaintiff incorporates all previous paragraphs as if fully reproduced.

34. The Wand was in a defective condition because of Defendants' failure to adequately warn consumers and users about the risk of serious harm associated with the Wand, including the tendency of the glass tube attachment to shatter and cause injuries.

35. The defective nature of the Wand was a proximate cause of the harms and losses suffered by the Plaintiff.

## COUNT IV
## WARRANTY CLAIMS
## (All Defendants)

36. Plaintiff incorporates all previous paragraphs as if fully reproduced.

37. Defendants knew that individuals such as Plaintiff Nelson, as ultimate users of the Wand, would rely on them to provide safe products, thereby expressly and impliedly warranting that the Wand would be suitable for its intended purposes and not shatter causing injuries.

38. Defendants' breach of warranties was a proximate cause of the harms and losses suffered by Plaintiff.

## COUNT V
## NEGLIGENCE
## (All Defendants)

39. Plaintiff incorporates all previous paragraphs as if fully reproduced.

40. Defendants DAJ Global and DAJ Distributions held themselves out to the public as having specialized knowledge in designing and manufacturing light therapy wands like the Wand. Defendants DAJ Global and DAJ Distributions owed consumers a duty to use reasonable care in the testing, design, manufacture, assembly, preparation, instructions, and warnings concerning the Wand.

41. DAJ Defendants knew about defects in the Wand and continued to sell and supply them.

42. Because of the knowledge DAJ Global and DAJ Distributions had or should have had related to light therapy wands and harms resulting from defects associated with light therapy wands, the negligence of DAJ Global and DAJ Distributions includes:

   (a) Failure to use the care in testing, designing, manufacturing and assembling the Wand that a reasonably careful designer, manufacturer or seller would use in similar circumstances to avoid exposing others to a foreseeable risk of harmful injuries;

   (b) Failure to design the Wand without the tendency of its glass attachment to fail and break into shards, given its purpose and how it was marketed;

   (c) Failure to reasonably test the Wand and glass attachments;

      (d)    Marketing and advertising the Wand as a safe product given the uses for which it was marketed; and

      (e)    Failure to adequately warn consumers and users about the risk of the Wand glass attachment's tendency to shatter and cause injury.

43.    Amazon held itself out to the public as having specialized knowledge in light therapy wands like the Wand. Amazon knew about defects in the Wand and continued to sell and supply them.

44.    Because of the knowledge Amazon had related to light therapy wands and harms resulting from defects associated with light therapy wands, the negligence of Amazon includes:

      (a)    Failure to use the care in testing, designing, manufacturing and assembling the Wand that a reasonably careful designer, manufacturer or seller would use in similar circumstances to avoid exposing others to a foreseeable risk of harmful injuries;

      (b)    Marketing and advertising the Wand as safe product given the uses for which it was marketed; and

      (c)    Failure to adequately warn consumers and users about the risk of the Wand's glass tube attachments tendency of shatter and cause injury.

45.    Each Defendant's negligence was a proximate cause of the harms and losses suffered by Plaintiff.

## COUNT VI
## MONTANA CONSUMER PROTECTION ACT ("MCPA")
## § 30-14-101, MCA, *ET SEQ*.
## (Against All Defendants)

46. Plaintiff incorporates all previous paragraphs as if fully reproduced.

47. Plaintiff is a "consumer" as defined under the Montana Consumer Protection Act ("MCPA") in § 30-14-102(1), MCA.

48. Defendants are defined as a "person" under § 30-14-102(6), MCA.

49. Defendants are engaged in "trade" and "commerce" as defined in § 30-14-102(8), MCA.

50. Under § 30-14-103, MCA, it is unlawful for Defendants to engage in unfair or deceptive acts or practices in the conduct of any trade or commerce.

51. Defendants engaged in deceptive or unfair acts and practices that offend established Montana public policy because they acted or practiced in a way that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers.

52. Defendants' unlawful conduct and violation of the MCPA was a proximate cause of Plaintiff's harms and losses, and Plaintiff is entitled to actual damages, statutory damages, treble damages, and an award of reasonable attorney's fees and costs under §§ 30-14-133, -134 and -315, MCA, *et seq*.

## PUNITIVE DAMAGES
### (Against All Defendants)

53.     Plaintiff incorporates all previous paragraphs as if fully reproduced.

54.     Defendants are guilty of actual malice as defined under § 27-1-221, MCA.  Defendants, acting together in pursuit of a joint venture, partnership and common enterprise, sold the Wand to Plaintiff when they knew of facts or intentionally disregarded facts that created a high probability of injury to Plaintiff, and Defendants deliberately acted in conscious or intentional disregard of the high probability of injury to Plaintiff and/or deliberately acted with indifference to the high probability of injury to Plaintiff.

55.     An assessment of punitive damages should be assessed against each Defendant to discourage them and others from engaging in like conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against each of the Defendants for all damages allowed by law, with costs of suit and for all such other and further relief to which she may be justly entitled, including:

   a.    Past and future health care expenses;

   b.    Past and future lost earnings and earning capacity;

   c.    Past and future pain and suffering;

   d.    Past and future mental and emotional suffering;

   e.    Lost services;

  f.  Alteration of established course of life;

  g.  Loss of enjoyment of life;

  h.  Purchases necessitated;

  i.  Costs of suit;

  j.  Interest as provided by law; and

  k.  Such other and further relief both general and special, at law and in equity, to which Plaintiff may be justly entitled and the Court deems appropriate.

And, WHEREFORE, Plaintiff also demands judgment against each Defendant for punitive damages in a sufficient amount to discourage each of them and others from engaging in like conduct in the future.

Dated this 7th day of November, 2023.

          CONNER, MARR & PINSKI, PC

          By: /s/ J.R. Conner
            J.R. Conner
            P. O. Box 3028
            Great Falls, MT 59403-3028
            *Attorneys for Plaintiff*

## **DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury on all causes of action and/or claims for relief alleged in, and on all issues raised by, this Complaint.

Dated this 7th day of November, 2023.

        CONNER, MARR & PINSKI, PC

        By: /s/ J.R. Conner
            J.R. Conner
            P. O. Box 3028
            Great Falls, MT 59403-3028
            *Attorneys for Plaintiff*